UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| **CLUB MADONNA, INC.**, a Florida corporation, ) | |
| d/b/a CLUB MADONNA, ) | |
| ) | CASE NO.: |
|      Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **CITY OF MIAMI BEACH**, a Florida ) | |
| municipal corporation, ) | |
| ) | |
|      Defendant. ) | |
| ————————————————/ | |

# <u>VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES</u>

Plaintiff, CLUB MADONNA, INC., file this Complaint against the CITY OF MIAMI BEACH, pursuant to 42 U.S.C. §1983, seeking a judgment declaring that the January 10, 2014 "Order Revoking Occupational License, Business Tax Receipt and Certificate of Use" was imposed without due process and in violation of Plaintiff's First and Eighth Amendment Rights and that §§14-403 through 14-408 (as to certificates of use) and §§102-381 through 102-385 (as to business licenses) of the City of Miami Beach Code of Ordinances, violate the First, Eighth and Fourteenth Amendments on their face and as applied to this Plaintiff. Plaintiff further prays for issuance of an injunction against those unconstitutional ordinances and practices. Plaintiff further demands damages against for the losses occasioned by the unconstitutional application of the City's laws and policies against the Plaintiff.

## JURISDICTION

1.      This suit is brought pursuant to 42 U.S.C. §1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.      This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.      The Court has the authority to issue declaratory judgments pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.      This Court also has jurisdiction to grant equitable relief for violation of civil rights and liberties pursuant to 42 U.S.C. §1983.

5.      The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

6.      This Complaint seeks declaratory relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§ 1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth

Amendments to the Constitution.

7.     This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain ordinances, actions and policies of the Defendant. There are substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendant's laws, policies and actions taken under color and authority of "state" law and procedures, in violation of Plaintiff's rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.

## VENUE

8.     Venue is proper in the Southern District of Florida, Miami Division, since the laws and policies complained of are those of the City of Miami Beach, Florida, which is within the district and geographical area assigned to the Miami Division.

## THE PARTIES

9.     Plaintiff, CLUB MADONNA, INC., is a Florida corporation doing business as CLUB MADONNA at 1527 Washington Avenue, Miami Beach, Florida 33139, Miami-Dade County, Florida (herein referred to as Plaintiff or ""CLUB MADONNA").

10.     Defendant, CITY OF MIAMI BEACH, is a Florida municipal corporation located in Miami-Dade County, Florida (herein referred to as "Defendant", "City" or "City of Miami Beach").

## BACKGROUND FACTS

11.     Plaintiff owns and operates a nonalcoholic beverage establishment in Miami Beach which features performances by dancers in the nude. The dance provided by Plaintiff is a form of non-obscene, constitutionally protected expression which is

presumptively protected by the First Amendment to the United States Constitution. This expressive activity is performed before a consensual audience, all over the age of eighteen years, desirous of receiving and enjoying the message conveyed by the entertainer of normal human sexual interest in sensual subtleties.

12.     Plaintiff believes that providing this form of expressive communication to the public is a beneficial social activity which enhances individual's ability to assimilate and consider various issues involving sexual candor and the interest in human sexuality that all human beings have to a greater or lesser degree. Plaintiff considers this expression to enhance the appreciation of the human body, with an emphasis on the consideration of popular contemporary concepts of physical attractiveness and the stimulating and entertaining aspects of same, which are clear characteristics of a normal and healthy interest in human sexuality.

13.     Plaintiff communicates these beliefs by offering the expression described above. The expression offered by Plaintiff's business is not intended to be, nor is it, obscene as contemplated by contemporary community standards. Plaintiff does not intend this expression to appeal to any prurient interest. Plaintiff believes that the specified performances contain serious artistic value.

14.     Plaintiff has presented nude erotic entertainment at this location for approximately the past twenty years. Prior to Plaintiff operating a nude entertainment facility at this location, other corporations provided similar entertainment. Said location has been the site of nude entertainment for approximately the past forty years.

15.     Plaintiff's current business format is regulated by Miami Beach City Code Section 6 -40, which prohibits nudity where alcoholic beverages are sold and Section 12-

48 of Ordinance 89-2665 of the Miami Beach Code which prohibits any alcoholic beverage establishment from permitting nudity on any land on Miami Beach.

## PRIOR LITIGATION AND CONFLICT BETWEEN THE PARTIES

16.     There is a substantial history of conflict between the two parties which led directly to the bad faith and retaliatory license revocation complained of in this Complaint. The recitation of facts below is not intended to relitigate those issues or to seek a substantive ruling on any of the disputes. Rather, the facts are alleged in detail to show why the City has engaged in retaliatory conduct.

17.     Club Madonna's current business format is regulated by Miami Beach City Code §6-40, which prohibits nudity where alcoholic beverages are sold, and §12-48 of Ordinance 89-2665, readopted in Ordinance 90-2684 of the Miami Beach Code, which prohibits and alcoholic beverage establishment from permitting nudity on any land in Miami Beach.

18.     Club Madonna has long desired to change its current operation to one where its performers are allowed to perform totally nude with alcohol being sold and served.

19.     After years of suffering under this out-dated law, Club Madonna sought to change Miami Beach's ordinances through the legislative process, as is its basic constitutional right, through the passage of the new ordinance to allow alcohol and nudity under certain reasonable conditions and hours.

20.     In late 2003, Club Madonna introduced proposed legislation to the City of Miami Beach City Commission, which was designed to permit night clubs offering nude entertainment to also sell alcohol to its patrons. Club Madonna lobbied the City through lawful channels to enact this reform.

21.     Those lobbying efforts met opposition from Jane Gross, the wife of one of the City Commissioners. When Ms. Gross overstepped the bounds of fair comment, the principal of Club Madonna brought suit against her for defamation.

22.     That defamation suit was considered by the City Commissioners sitting at that time to be a personal affront. All further interactions between the City and Club Madonna have been colored by that personal animosity which is ongoing and held by the current City Commissioners and key management personnel of the City.

23.     Eventually, Club Madonna also filed suit in the Federal Courts seeking to have §6-40 and §12-48 declared unconstitutional. *See*, Club Madonna, Inc. v. City of Miami Beach, Case No.: 05-21213 (S.D. Fla).

24.     The City refused to consider settlement of the Federal suit or the enactment of corrective legislation unless Club Madonna first dismissed the suit against Ms. Gross and paid her attorney's fees. That attempt at extortion led to an ethics investigation of the City Commission by the Miami-Dade County Commission on Ethics and Public Trust.

25.     An investigation of the extortion of Club Madonna by the City was also carried out by the Miami-Dade State Attorney's Office. At least one assistant City attorney was brought before the State Attorney's Office to be interviewed regarding this extortion and the roles of the City Commission and City Attorney's Office. It is believed this occurred in 2012.

26.     Club Madonna ultimately dismissed the Federal suit and the state law defamation action with the understanding that the City would again consider reforms to its alcohol and nudity ordinance. However, Club Madonna refused to pay any of Ms. Gross' attorney's fees.

27.     When the City did not live up to its representations and did not bring the reform legislation to a vote, Club Madonna again brought suit in Federal Court challenging both the constitutionality of the alcohol and nudity ordinances and the conduct of the City Commission in conditioning legislative action on payment of a private citizen's attorney's fees in unrelated Gross litigation. *See*, Club Madonna, Inc. v. City of Miami Beach, Case No.: 08-cv-23469-KMM (S.D. Fla.).

28.     That case was settled though a formal settlement agreement which required the City to conduct a non-public hearing under certain defined parameters to consider enactment of reforms to the alcohol and nudity ordinance. The Federal action was dismissed in reliance on the promises and covenants made by the City in the settlement agreement.

29.     Again, the City did not comply with its obligations. Accordingly, Club Madonna again filed suit in Federal Court. The case of Club Madonna, Inc. v. City of Miami Beach, Case No.: 13-cv-23762-Lenard (S.D. Fla.) remains pending before this Court.

## **IMMEDIATE REMEDIAL MEASURES**

30.     Plaintiff has a formal policy prohibiting persons under the age of majority from performing at its establishment under any circumstances.

31.     Plaintiff has policies and procedures in place designed to prevent any persons under the age of majority from entering its premises for purposes of performance or otherwise.

32.     On January 6, 2014, a search warrant was issued and executed at Club Madonna for evidence of violations of Florida Statute §787.06(3)(h) (Commercial Sexual

Exploitation of a Minor Under 15 years of Age); Florida Statute §796.03 (Procuring Person Under the Age of 18 for Prostitution); Florida Statute §796.05 (Deriving Support from the Proceeds of Prostitution); Florida Statute §827.04 (Contributing to the Delinquency of a Minor); and Florida Statute §787.03 (Interference with Child Custody).

33.    The search warrant was issued with respect to an investigation of third parties, none of whom was a principal, officer, manager or employee of Club Madonna.

34.    No principal, officer, manager or employee of Club Madonna has been charged with any of the offenses stated above.

35.    Based upon information gleaned from a Probable Cause Affidavit and reported in the press, it is alleged that a female of 13 years of age danced at Club Madonna during the last week of 2013 and into the first week of 2014.

36.    After a preliminary investigation, the truth or accuracy of these statements cannot be confirmed or denied by Plaintiff.

37.    Regardless of the truth or accuracy of those statements, Club Madonna has been cooperating with law enforcement in this investigation.

38.    Furthermore, Plaintiff undertook immediate remedial measures upon learning that an underage performer may have appeared in the establishment.

39.    The allegedly underage performer does not currently perform at Plaintiff's establishment and, will not, of course, be permitted to do so in the future.

40.    Plaintiff has checked the available records of the dancers who had performed at Club Madonna and has verified that all of those performers were over the age of majority.

41.     Plaintiff has checked the available records of the other performers and employees and has verified that all such performers and employees are over the age of majority.

42.     Plaintiff sent a representative from Club Madonna to the latest COAST seminar presentation in Tampa, Florida on January 14, 2014. The information presented at the seminar, put on by a team including club executives and agents from HSI and local law enforcement agents, will be disseminated to all staff at Club Madonna subsequent to the seminar.[1]

## EMERGENCY REVOCATION OF BUSINESS LICENSES

43.     At approximately 5:00 PM on Friday, January 10, 2014, Club Madonna was served with an "Order Revoking Occupational License, Business Tax Receipt and Certificate of Use" signed by the City Manager, Jimmy L. Morales. A copy of the Order is attached as Exhibit "A" to this Complaint and will be referred to herein as "revocation Order" or "closure Order".

44.     The revocation Order required Plaintiff to close its business as it is illegal to operate without the requisite licenses in Miami Beach.

45.     The revocation Order states that "The owner of Club Madonna has admitted to having no actual knowledge of whether the minor performed at his establishment, but

---

[1] Plaintiff is a member of the "Florida Sunshine Entertainment Association" and the associated national organization, "Ace National", which is the trade organization for America's adult nightclubs. Ace National has teamed up with Homeland Security Investigations (HSI) to address the problem of sex trafficking in the United States. The project has resulted in a campaign called "COAST" (Club Operators Against Sex Trafficking). COAST training seminars have been held across the country for managers, employees and entertainers, from adult entertainment establishments. The seminars teach how to recognize, report, and rescue victims.

reportedly admits that 'he heard' that she did."

46.     The revocation Order goes on to say, "Based on the gravity of the allegations, the evidence collected and the owner's admitted failure to have the required knowledge of what illegal activity occurs at Club Madonna, the City Manager has determined that this activity presents an actual threat to the public health, welfare and safety of the residents of Miami Beach".

47.     The revocation Order further goes on to say that "An emergency suspension or revocation of Club Madonna's Certificate of Use" is warranted.

48.     That in addition to the suspension of the Certificate of Use, Plaintiff's Occupational License/Business Tax Receipt has also been suspended.

49.     Pursuant to the revocation Order, the revocations of the Occupational License/Business Tax Receipt and the Certificate of Use are for a period of six (6) months.

50.     The revocation Order does not provide for any administrative review, does not advise Plaintiff of any administrative or judicial appellate remedies, and does not state that any hearing has been set to consider the charges or that a hearing will be set in the future.

51.     Plaintiff received no notice from the City that it was considering administrative action against its Certificate of Use or Business Tax Receipt.

52.     Plaintiff was not afforded any kind of hearing prior to the issuance of the revocation Order.

53.     There were no exigent circumstances or serious danger present which would justify the issuance of the revocation Order without pre-deprivation notice and an opportunity to be heard.

54.     In particular, the immediate alleged violation – a single underage performer who *may* have been in the club – has been cured and there is no evidence or allegation that there has been or will be a recurrence of that violation. If there ever was a threat to the public safety, it has been removed with adequate assurances that it will not reoccur in the future.

55.     Although Club Madonna has been in existence for approximately 20 years, this is the first allegation ever presented to Club Madonna of having an underage dancer perform at the club.

56.     There is no evidence, nor are there any allegations by the City of Miami Beach that underage girls currently perform at Club Madonna. Neither is there any evidence or allegation of any other occurrence of an underage performer other than the single instance referenced in the revocation Order.

57.     The revocation Order does not provide for any cure period. That is, there is nothing in the City's Order that would allow for Club Madonna to take any remedial measures in order to alleviate the City's concerns and to continue its business and its speech activities. Notwithstanding the failure to allow remedial measures to correct the alleged violation, Plaintiff has taken appropriate steps in that regard.

58.     The revocation Order does not require Club Madonna to perform any particular act or to cure any perceived threat or danger to the public health, welfare and safety, other than being closed for six months.

59.      The revocation Order does not show, explain, or identify why six months is a necessary time for Club Madonna to be closed and prevented from presenting constitutionally-protected expression, as opposed to, for argument's sake, six days.

60.     The six-month closure is an arbitrary time period set by the City Manager in bad faith for the purpose of punishing Club Madonna and not for the purpose of alleviating an emergency condition or danger to the public health, welfare and safety of the residents of Miami Beach.

61.     The revocation Order does not even assert that the closure of Club Madonna is for the safety, welfare or public health of the entertainers or visitors to Club Madonna. Rather, Order asserts that the closure is required to protect the residents of Miami Beach, although there is no reference or explanation as to how the closure of Club Madonna for six months protects these residents.

62.     The six month closure is punitive rather than remedial.

### THE LICENSING ORDINANCES

63.     The Ordinances at issue in this case include the following provisions:

Sec. 102-383. Notice of violation; emergency action.

> If the city manager or his designee believes that a taxee has engaged or is engaged in conduct warranting the suspension or revocation of a business tax receipt, he shall serve the taxee by certified mail or hand delivery, at his business address as disclosed in his application for the business tax, a written administrative complaint which affords reasonable notice to the taxee of facts or conduct that warrant the intended action. The complaint shall state what is required to be done to eliminate the violation, if any. The taxee shall be given adequate opportunity to request a prior administrative hearing unless the city manager finds that an emergency condition exists involving serious danger to public health, safety or welfare, in which case advance notice and hearing shall not be required. In the case of an emergency suspension or revocation, the taxee shall immediately be advised of the city manager's action and afforded a prompt post-suspension or revocation hearing in accordance with section 102-385.

Sec. 102-384. Hearing when taxee or permittee fails to comply with notice or when requested by aggrieved applicant/taxee.

> If a taxee or permittee fails to comply with any notice issued as provided in section 102-383, the city manager or his designee may issue an

order in writing to the taxee, by certified mail or hand delivery, notifying him to appear at an administrative hearing before the city manager or his designee to be held at a time to be fixed in such order, which date shall be not less than five days after service thereof. Except as provided in subsection (b) of section, an administrative hearing may also be requested by an applicant/taxee aggrieved by a decision of a code compliance officer regarding denial of a business tax receipt, determination of fees/penalties due and/or warning of potential suspension/revocation for violation of a provision of this article. The request must be in writing and filed in the city manager's office within ten days of receipt of the decision of the inspector. The request must specify the decision complained of and the nature of the applicant's/taxee's grievance and must be accompanied by a fee as approved by a resolution of the city commission to defray expenses of the hearing. The fee will be refunded if the applicant/taxee prevails in the appeal. The city's costs and fees shall be assessed and liened as provided in subsection 30-72(a).

Sec. 102-385. Hearing procedures; enforcement of orders.

(a)     *City manager review.*

(1)     Other than as set forth in subsection (b) of this section, the city manager or his designee shall give written notice of the time and place of the hearing to the taxee/applicant by certified mail or hand delivery and to the city attorney's office.

(2)     The proceedings shall be informal but shall afford the taxee/applicant the right to testify in his own defense, present witnesses, be represented by legal counsel, submit relevant evidence, cross examine witnesses and object to evidence.

(3)     The proceedings shall be recorded and minutes kept by the city. Any applicant/taxee requiring verbatim minutes for judicial review may arrange for the services of a court reporter at his own expense.

(4)     Within ten days of the close of the hearing, the city manager or his designee shall render his decision in writing determining whether or not the tax receipt shall be revoked or suspended or denied, or other action taken or continued, as the case may be, and stating his reasons and findings of fact.

(5)     The city manager or his designee shall file his findings with the city clerk and shall send a true and correct copy of his order by certified mail, return receipt requested, or by hand delivery, to the business address listed on the business tax

receipt or to any such other address as the taxee or applicant shall designate in writing.

(b)     *Board of adjustment review.* Denial of a business tax receipt for lack of proper zoning shall be appealable to the board of adjustment pursuant to sections 118-136 and 118-351 et seq. All appeals must be submitted to the board of adjustment within 15 days of the date of the denial.

(c)     *Administrative rulings as final.* The city manager's designee's/board of adjustment's findings shall constitute the final administrative action of the city for purposes of judicial review under state law.

(d)     *Enforcement.* If an applicant/taxee fails to seek timely appellate review of an order of the city manager or his designee/administrative hearing officer/board of adjustment, or to comply timely with such order, the code compliance officer may pursue enforcement procedures as set forth in section 102-377. Business closings required by suspension/revocation Orders may be enforced by the police department.

Sec. 14-406. Notice of violation; emergency action.

(a)     If the city manager or his designee believes that an owner/applicant has engaged or is engaged in conduct warranting the suspension or revocation of a certificate of use, he shall serve the owner/applicant by certified mail or hand delivery, at his business address as disclosed in his application for the certificate of use, a written administrative complaint, which affords reasonable notice to the owner/applicant of facts or conduct that warrant the intended action. The complaint shall state what is required to be done to eliminate the violation if any.

(b)     The owner/applicant shall be given adequate opportunity to request a prior administrative hearing as specified in section 14-407, unless the city manager finds that an emergency condition exists involving serious danger to public health, safety or welfare, in which case advance notice and hearing shall not be required. In the case of an emergency suspension or revocation, the owner/applicant shall immediately be advised of the city manager's action and afforded a prompt post-suspension or revocation hearing in accordance with section 14-408

Sec. 14-407. Hearing when owner/applicant or permittee fails to comply with notice or when requested by aggrieved owner/applicant.

If an owner/applicant or permittee fails to comply with any notice issued as provided in section 14-36, the city manager or his designee may issue an

order in writing to the owner/applicant by certified mail or hand delivery notifying him to appear at an administrative hearing before a special master to be held at a time to be fixed in such order, which date shall be not less than five days after service thereof. Except as provided in section 14-408(b), an administrative hearing may also be requested by an owner/applicant aggrieved by a decision regarding denial of a certificate of use, determination of fees/penalties due, and/or warning of potential suspension/revocation. The request must be in writing and filed in the city manager's office within ten days of receipt of the decision complained of. The request must specify the decision and the owner/applicant's grievance and must be accompanied by a fee as specified in appendix A to defray expenses of the hearing. The fee will be refunded if the owner/applicant prevails in the appeal.

Sec. 14-408. Hearing procedures; enforcement of orders.

(a)    Review by special master.

    (1)    Other than as set forth in subsection (b) of this section, the special master shall give written notice of the time and place of the hearing to the owner/applicant by certified mail or hand delivery and to the city attorney's office.

    (2)    The proceedings shall be informal but shall afford the owner/applicant the right to testify in his own defense, present witnesses, be represented by legal counsel, submit relevant evidence, cross examine witnesses, and object to evidence. The proceedings shall be recorded and minutes kept by the city. Any owner/applicant requiring verbatim minutes for judicial review may arrange for the services of a court reporter at his own expense.

    (3)    Within ten days of the close of the hearing the special master shall render his decision in writing determining whether or not the owner/applicant's certificate of use shall be revoked or suspended or denied, or other action taken or continued, as the case may be and stating his reasons and findings of fact.

    (4)    The special master shall file his findings with the city clerk and shall send a true and correct copy of his order by certified mail, return receipt requested, or by hand delivery to the business address listed on the certificate of use or to any such other address as the owner/applicant shall designate in writing.

(b)     Board of adjustment review. Denial of a certificate of use for lack of proper zoning shall be appealable to the board of adjustment pursuant to section 118-136(a)(1). All appeals must be submitted to the board within 30 days of the date of the denial.

(c)     Administrative rulings as final. The special master or board of adjustment's findings shall constitute the final administrative action of the city for purposes of judicial review under state law.

(d)     Enforcement. If an owner/applicant fails to seek timely appellate review of an order of the special master or the board of adjustment, or to comply timely with such order, the city manager's designee may pursue enforcement procedures as set forth in section 14-403. Business closings required by suspension/revocation Orders may be enforced by the city's police department and the costs for the enforcement action shall be placed as a lien against the owner/applicant's real and personal property.

## COLOR OF STATE LAW

64.     As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, Defendant CITY OF MIAMI BEACH and its agents, were, and are, acting under color of state law and authority.

## DAMAGES AND ATTORNEY'S FEES

65.     Plaintiff has suffered damages as a direct result of Defendant's ordinances, policies and practices and the unconstitutional enforcement of those ordinances and policies. Plaintiff's damages consist of infringement upon Plaintiff's constitutional rights as well as monetary losses. The monetary losses include lost profits, carrying costs and injury to good will.

66.     Plaintiff has retained BENJAMIN, AARONSON, EDINGER & PATANZO, P.A. as its attorneys to represent it in this action and has agreed to pay them a reasonable fee, which fee Defendant must pay pursuant to 42 U.S.C. §1988.

## CONSTITUTIONAL VIOLATIONS

67.     The authorizing Ordinances  -  §102-381 (as to business licenses) and §§14-

403 and 14-404 (as to certificates of use) - are unconstitutional on their face and applied to this Plaintiff.

68.     The procedural provisions which give effect to the revocation decision - §§102-383 and 102-385 (as to business licenses) and §§14-406 and 14-408 (as to certificates of use) – are also unconstitutional on their face and applied to this Plaintiff.

69.     The subject Ordinances violate the First Amendment as applied because they allow the City Manager unfettered discretion to suspend or revoke a license necessary for speech without judicial approval and without any of the substantive or procedural protections required by <u>FW/PBS v. City of Dallas</u>, 493 U.S. 215, 110 S.Ct. 596 (1990) and <u>Fort Wayne Books, Inc. v. Indiana</u>, 489 U.S. 46, 109 S.Ct. 916, 928 (1989).

70.     The subject Ordinances violate the due process clause of the Fourteenth Amendment on their face and as applied because they allow for arbitrary, discriminatory, and even bad faith decision-making, and do not provide a quick or effective post-deprivation hearing as required by <u>Fuentes v. Shevin</u>, 407 U.S. 67, 92 S.Ct. 1983 (1972); *See, also*, <u>Grayden v. Rhodes</u>, 345 F.3d 1225 (11th Cir. 2003), <u>Noatex Corp. v. King Const. of Houston, L.L.C.</u>, 732 F.3d 479 (5th Cir. 2013).

## ALLEGATIONS IN SUPPORT OF INJUNCTIVE RELIEF

71.     Plaintiff is suffering irreparable injury and is threatened with irreparable injury in the future by reason of the Defendant's illegal revocation of Plaintiff's business licenses and the closure of Plaintiff's business. Plaintiff has no plain, adequate, nor complete remedy to protect its constitutional rights and to redress the wrongs and illegal acts complained of, other than immediate and continuing injunctive relief.

72.     Plaintiff will suffer a continuing violation of its civil rights and liberties as a result of the emergency closure order should an injunction not issue.

73.     A permanent injunction will preserve Plaintiff's civil rights and reduce the need to compensate Plaintiff with money damages for further violations of its rights.

74.     The harm which would be suffered by the Plaintiff without an injunction — the loss of its constitutional rights — exceeds any conceivable harm the Defendant would suffer if it is prohibited from enforcing a clearly illegal system for license revocations.

75.     A permanent injunction prohibiting future issuance of emergency closure orders in violation of due process rights would not be contrary to the public interest.

## COUNT I

### (Violation of First Amendment Rights – As Applied (Procedural Claims))

76.     Plaintiff realleges the facts set forth in Paragraphs 1 through 75 and of this Complaint and incorporate those facts into this Count by reference.

77.     This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

78.     Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

79.     The ordinances, policies and practices of the Defendant, as above-described, are intended to and have the actual effect of censoring Plaintiff's speech and preventing Plaintiff from disseminating its message of eroticism.

80.     While Plaintiff is subject to the emergency closure order, it is unable to engage in free speech.

81.     The Closure Order, revoking both the Occupational License and the Certificate of Use, violates Plaintiff's First Amendment Right to expression and acts as an unlawful prior restraint.

82.     The subject Ordinances specifically authorize the City Manager to impose a prior restraint in the form of an emergency closure order for alleged code violations.

83.     The First Amendment does not tolerate a prior restraint without careful substantive and procedural safeguards. An administrative closure order with no prior judicial review and no immediate post-deprivation hearing is a particularly egregious prior restraint.

84.     Even if the subject Ordinances are not unconstitutional on their face, they have been applied in such a manner as to intentionally deprive Plaintiff of its First Amendment rights by creating a prior restraint. That prior restraint is both created and removed in the sole discretion of the City Manager. Furthermore, that discretion has been intentionally abused with the purpose and effect of depriving Plaintiff of its First Amendment rights.

85.     The City Manager is empowered, in his unfettered discretion, to declare that an emergency exists and is authorized without notice to the occupant or owner of the property, to suspend or revoke any Occupational License and the Certificate of Use.  There

are no limits placed on the discretion of the City Manager; that discretion is absolute and unfettered.

86.     Emergency closure orders, issued by the City Manager under the authority of §102-381 and §14-408, are unconstitutional when applied against First Amendment protected businesses because they lack the substantive and procedural protections required by FW/PBS v. City of Dallas, 493 U.S. 215, 110 S.Ct. 596 (1990).

87.     Emergency closure orders do not provide a specified brief period of time for administrative or judicial review of the City Manager's decision.

88.     The subject Ordinances are facially unconstitutional because they allow the City Manager, to impose a prior restraint on speech in his unfettered discretion under a scheme which does not afford a prompt administrative decision within a specified period of time, fails to provide for prompt judicial review, and does not maintain the status quo pending appeal to the judiciary.

89.     The Ordinances nominally allow for a post-deprivation hearing.  However the time for said hearing is to be set by the City Manager (or the Special Master) at his discretion,[2] with no Constitutional safe guards that the hearing will occur in a timely fashion or at all.  Further the hearing officer is a Special Master or Designee of the City Manager and are selected by the City, paid by the City and whose future employment is obviously contingent on their allegiance to the City. This process does not afford Plaintiff

---

[2]   Revocations of business tax receipts are reviewed by the "City Manager or his designee". *See*, §102-385. Revocations of certificates of use are reviewed by a "Special Master". *See*, §14-408. It may be that the Special Master also reviews BTR cases as the City Manager's "designee", but the Ordinances do not make that clear. It may well be that the City employs separate hearing officers for the two proceedings. The discussion is academic as no hearing of any kind has been afforded Plaintiff in this case.

a fair and impartial hearing before a neutral trier of fact

90.    The administrative decision to close Plaintiff's businesses through an emergency closure order was made without any judicial review or approval whatsoever.

91.    Furthermore, the closure Order does not preserve the *status quo* pending judicial review.

92.    The emergency closure Order has much more than an incidental effect on Plaintiff First Amendment protected expression as the order allows no alternative avenues of communication – an entire category of speech is simply prohibited.

93.    The Plaintiff has a constitutional right to present non-obscene erotic dance by performers over the age of majority. The closure order prevents Plaintiff from exercising these rights and from presenting constitutionally protected expression.

94.    The future restraint has no connection to and does not cure the single alleged incident of an unauthorized performance by a minor.

95.    Even if the ordinances do not impose a prior restraint on their face, they have been used in practice to restrain Plaintiff's speech and are unconstitutional as applied.

96.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the closure order issued against Plaintiff violated Plaintiff's First Amendment rights;

C.    That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385of the Miami Beach Code are unconstitutional on their face because those provisions violate Plaintiff's First Amendment rights;

D.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to the Plaintiff because they have been employed in such a manner as to violate Plaintiff's First Amendment rights.

E.      That the Court enter a permanent injunction forever enjoining Defendant from issuing emergency closure orders under §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code in the absence of an Order from a Court directing same;

F.      That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

G.      That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

## COUNT II

### (Violation of First Amendment Rights – As Applied (Substantive Claims))

97.     Plaintiff realleges the facts set forth in Paragraphs 1 through 75 of this Complaint and incorporate those facts into this Count by reference.

98.     This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

99.     Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities.

There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

100.    The ordinances, policies and practices of the Defendant as above-described, are intended to and have the actual effect of censoring Plaintiff's speech and preventing Plaintiff from disseminating their message of eroticism.

101.    Section 102-381 and §14-408 specifically authorizes the City Manager, to impose a prior restraint in the form of an emergency closure order if emergency conditions exist.

102.    The emergency revocation Order was purportedly based upon alleged illegal performances by a single underage dancer at Plaintiff's establishment and not upon a finding that an emergency condition existed which created a danger to the community.

103.    No Court has determined that the dancer was underage, that she performed at Plaintiff's establishment or that any performance violated the law in any respect.

104.    The restraint of revocation was imposed on the basis of a preliminary administrative determination only, with no judicial review.

105.    The revocation is based on allegations of one or more dance performances by a single performer and is not based on any physical defect in the premises or other characteristics of the establishments, its employees or contractors. Neither was the revocation based upon the existence of a dangerous condition.

106.    The revocation is not based on a law of general application to all businesses, but rather on a performance at an establishment engaged in First Amendment protected activities.

107.    The emergency revocation does not allege that the underage dancer continues to perform at Plaintiff's establishment.

108.    The emergency revocation does not allege that any other performers at Plaintiff's establishment are under the age of majority.

109.    The emergency revocation does not allege that any other performance is obscene or otherwise in violation of the law.

110.    The emergency revocation Order is not limited to dance performances by the single performer who is alleged to be underage.

111.    The emergency revocation Order affects all future dancer performances at Plaintiff's establishment; regardless of who performs or the nature of that future performance.

112.    The City Manager had no factual basis to believe that any future performance would constitute a threat to the public health, safety or welfare of the citizens of Miami Beach.

113.    The revocation Order in this instance is exactly the equivalent of closing an adult theater based on the showing of a single obscene movie without a prior judicial determination that future speech is unprotected. Such revocation Orders have universally been deemed unconstitutional prior restraints *See, e.g.*, Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 109 S.Ct. 916 (1989).

114.    To Plaintiff's knowledge, no case decided in the United States in the last thirty years has ever upheld the closure of a business and the restraint on expression under the circumstances present here.

115.    The revocation is over broad and not narrowly tailored to the government's only asserted interest: prohibiting underage performances in adult entertainment establishments.

116.    At the present time, Plaintiff's business has been forcibly closed and Plaintiff cannot engage in speech activities. This deprivation of First Amendment rights, coupled with the egregious nature of the seizure, is what justifies emergency relief in this case.

117.    The closure order is for six months, thereby preventing constitutional expression for that period of time.  Yet, this lengthy restraint has no justification based upon the circumstance and is not narrowly tailored to achieve any perceived harm. It is punitive and not remedial.

118.    Unless this Court issues a preliminary injunction, Plaintiff will be irreparably injured by the deprivation of its rights under the First Amendment. As a matter of law, the deprivation of rights guaranteed under the First Amendment is an irreparable injury for purposes of injunctive relief.

119.    Allowing Plaintiff to reopen pending these Court proceedings will restore the *status quo* which immediately preceded the illegal closure complained of.

120.    The actions of the Defendant will and have deprived the Plaintiff of Constitutional rights under the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the closure order issued against Plaintiff violated Plaintiff's First Amendment rights;

C.    That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional on their face and as applied because those provisions violate Plaintiff's First Amendment rights;

D.    That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to the Plaintiff because they have been employed in such a manner as to violate Plaintiff's First Amendment rights.

E.    That the Court enter a permanent injunction forever enjoining Defendant from issuing emergency closure orders under §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code in the absence of an Order from a Court directing same;

F.    That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

G.    That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

## COUNT III

**(Violation of Due Process Rights – Facial Challenge - Finding of Emergency)**

121.    Plaintiff realleges the facts set forth in Paragraphs 1 through 75 of this Complaint and incorporate those facts into this Count by reference.

122.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

123.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide

controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore require a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

124.     Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by Defendant. Such communication is protected under the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

125.     Section 102-381 and §14-408 gives the City Manager unbridled discretion to determine whether an emergency exists which would justify a closure order.

126.     The Code does not adequately constrain the discretion of the City Manager because it specifically confers on the City Manager the right to act on his opinion, without more.

127.     Neither §102-383 nor §14-406 adequately define those circumstances which constitute an emergency. The general reference to any "serious danger to public health, safety or welfare" does not adequately constrain the discretion of the City Manager and has been known to be constitutionally defective for almost fifty years. See, Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150-51, 89 S. Ct. 935, 938-39 (1969).

128.     The other provisions of the subject Ordinances provide even less guidance and only serve to expand the authority of the City Manager to issue such orders as he chooses in his unfettered discretion.

129.     The inadequacies of the statutory definition are well reflected by their application to the Plaintiff in this case. There was no evidence before the City that the alleged underage dancer was still dancing at Club Madonna and no such allegation was recited in the revocation Order.

130.     Therefore, if there had been an emergency, that emergency had been fully abated and there was no continuing "serious danger" to the public health, safety or welfare. The emergency closure in this case could not be justified on the basis of an intent to prevent future instances of underage dancing as there was no evidence or allegation that Club Madonna presented such a risk.

131.     Furthermore, the prior 20 years of operation without an incident of underage dancing shows that such events are rare or non-existent and could not be expected to recur in the future.

132.     Thus any future violation was speculative and not supported by fact. The City's Ordinances do not expressly allow for protection against speculative future emergencies, but only to event posing a "serious danger' at the time of the revocation.

133.     Section 102-383 and §14-406 do not require any prior notice to the landowner or party in possession before issuing a revocation Order.

134.     The subject Ordinances do not provide for an immediate post-deprivation hearing to validate the emergency administrative determination. Instead, the aggrieved party is only to be "afforded" a hearing under both Ordinance provisions, with the notice of time and place determined by the City Manager or the Special Master.

135.    There is no definition of prompt or specific time frames as to when a hearing must take place under either section.  No judicial review can be had until the post deprivation hearing is set by the City and a decision is rendered.

136.    Under the two sections, either a Special Master or the City Managers Designee are the triers of fact and the decision maker under the Code.[3]

137.    The hearing officer is a Special Master or Designee of the City, selected by the City, paid by the City and whose future employment is obviously contingent on their allegiance to the City. This process does not afford Plaintiff a fair and impartial hearing before a neutral trier of fact.

138.    The subject Ordinances are therefore unconstitutional on their face because:

A.    They do not provide for pre-deprivation notice and an opportunity to be heard before the seizure and loss of property and speech rights;

B.    In those rare cases where exigent circumstances justify action without prior notice or a hearing, there is no guaranty of an immediate post-deprivation hearing to challenge the revocation Order.

C.    There are no limits on the City Managers discretion and there are no definitions to curtail his unbridled discretion.

D.    The hearing officer contemplated by the Ordinance is neither neutral nor impartial.

139.    Plaintiff is entitled to a declaration of its rights.

---

[3] As noted above the two Ordinance sections vary somewhat as to which official is to give notice and provide the hearing – either the Special Master or the City Manager or his "designee"

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the closure order issued against Plaintiff violated Plaintiff's due process rights;

C.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code is unconstitutional on its face because those provisions violate Plaintiff's due process rights;

D.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385of the Miami Beach Code are unconstitutional as applied to the Plaintiff because they have been employed to violate Plaintiff's due process rights.

E.      That the Court enter a permanent injunction forever enjoining Defendant from issuing emergency closure orders under 102-381 and 14-408 of the Miami Beach Code in the absence of an Order from a Court directing same;

F.      That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

G.      That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

## COUNT IV

**(Violation of Due Process Rights – Facial Challenge – Inadequate Post-Deprivation Procedures)**

140.    Plaintiff realleges the facts set forth in Paragraphs 1 through 75 of this Complaint and incorporate those facts into this Count by reference.

141.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

142.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore require a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

143.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by Defendant. Such communication is protected under the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

144.    The subject Ordinances give the City Manager unbridled discretion to determine whether an emergency exists which would justify a closure order.

145.    The subject Ordinances do not require any prior notice to the landowner or party in possession before revoking business licenses and requiring a business to close.

146.    The subject Ordinances do not require that the landowner or party in possession be afforded a hearing before the City Manager issues revocation Orders and directs the closure of businesses.

147.    The subject Ordinances are therefore unconstitutional on their face because:

A.      They do not provide for pre-deprivation notice and an opportunity to be heard prior to the seizure of property and the loss of property and speech rights;

B.      They afford the decision maker (the City Manager) unfettered discretion and do not limit the issuance of closure orders to exigent circumstances;

C.      In those rare cases where exigent circumstances justify action without prior notice or a hearing, there are no provisions for an immediate post-deprivation hearing to challenge the closure order and termination of utility service.

148.    The revocation Order issued by the City Manager to Plaintiff is inadequate and failed to afford due process to the Plaintiff. Plaintiff allege the following particulars:

A.      The revocation Order issued by the City Manager does not identify a means of curing the alleged violation or allow for the curing of the alleged violation.

B.      The revocation Order issued by the City Manager does not provide a hearing date at which Plaintiff could appear and contest or defend against the alleged violations.

C.      The revocation Order issued by the City Manager does not instruct Plaintiff that they have a right to challenge the Revocation.

D.      The revocation Order does not advise Plaintiff of when the post-deprivation hearing will be held and no other notice of hearing was delivered contemporaneously or at any time after serve of the Order.

149.    The absolute power of the City Manager to declare an emergency and order the closure of Plaintiff's establishment without prior notice is an unconstitutional infringement upon Plaintiff's Fourteenth Amendment right to due process.

150.    The subject Ordinances do not provide for notice and an opportunity to be heard before issuance of a revocation Order and closure of a business.

151.    There were no exigent circumstances or serious danger present in the instant case.  For approximately twenty years the Plaintiff has provided nude erotic dance without so much as an allegation that any minor has entered the establishment, much less perform. There is no pattern of conduct or any reason based in fact to anticipate that this alleged violation will occur in the future.

152.    In the rare case where exigent circumstances may actually be present, the subject Ordinances do not provide for an immediate or effective post-deprivation hearing.

153.    The Ordinances envision a hearing before a Special Master or the City Manager's Designee. Although a hearing is to occur "promptly", that term is undefined in the Code. Furthermore, there are no guidelines specifying when a hearing must be concluded and a decision must issue. The nominal ten day period for decision making is illusory because there is no definite time within which the hearing must be set or concluded and the hearing officer is permitted to continue the hearing from time to time.

154.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the closure order issued against Plaintiff violated Plaintiff's due process rights;

C.    That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385of the Miami Beach Code is unconstitutional on its face because those provisions violate Plaintiff's due process rights;

D.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to the Plaintiff because they have been employed to violate Plaintiff's due process rights.

E.      That the Court enter a permanent injunction forever enjoining Defendant from issuing emergency closure orders under 102-381 and 14-408 of the Miami Beach Code in the absence of an Order from a Court directing same;

F.      That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

G.      That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

## **COUNT V**
### **(Violation of Due Process Rights – As Applied)**

155.    Plaintiff realleges the facts set forth in Paragraphs 1 through 75 of this Complaint and incorporate those facts into this Count by reference.

156.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

157.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

158.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by Defendant. Such communication is protected under the First Amendment to the United States Constitution. Furthermore, government actions to enforce local laws must afford due process to Plaintiff and similarly situated businesses.

159.    The subject Ordinances do not require any prior notice to the landowner or party in possession before issuing a revocation Order or directing the closure of a business.

160.    The subject Ordinances do not require that the landowner or party in possession be afforded a hearing before the City Manager issues a revocation Order.

161.    The subject Ordinances do require the City to set a "prompt" public hearing before the Special Master and to give immediate notice of that hearing.

162.    The City revoked Plaintiff's BTR and CU on Friday, January 10, 2014, without any pre-deprivation notice or hearing.

163.    The Order of revocation did not advise Plaintiff of its rights to challenge the administrative determination and did not provide notice of when the hearing before the Special Master would take place.

164.    The Due Process Clause requires that there be an immediate post-deprivation hearing in circumstances where exigent circumstances exist.

165.    While the exact number of hours or days before a hearing is required is not specified in the Constitution, the Courts have said that the hearing must be as prompt as possible given the circumstances, the chances of an erroneous determination and the rights at stake.

166.    In this case, a prompt hearing would necessarily mean "within a matter of days". Plaintiff alleges the following particulars:

A.    The only alleged violation purports to involve performances by a single underage dancer, who no longer performs at the business. No other performer is alleged to be underage or to be engaging in illegal performances and there are no physical defects in the premises which would justify a closure.

B.    The interests at stake are vital and pertain to two fundamental constitutional rights:

(1)    Plaintiff's First Amendment right of free speech along with the associated rights of Plaintiff's performers and patrons;

(2)    Plaintiff's livelihood is threatened as its business is closed and it is deprived of its property for a period of no less than six months;

C.    There is a substantial probability that the determination of exigent circumstances and the decision to close the business were both erroneous. That error is manifest on the face of the revocation Order: the supposed emergency threat, if previously existing, does not exist at this time. Furthermore, there is no factual basis to believe that there will ever be a future violation of the kind alleged by the City here. Finally, there has not yet been any judicial determination finding that the underlying violation actually occurred. The risk that First Amendment rights were wrongfully impaired – or burdened to an improper extent – is extremely high.

167.    Pursuant to 14-408 and 102-385 it is the City's affirmative obligation to set the post-deprivation hearing and to give immediate notice of same.

168.    There is no practical reason why the City could not have convened a hearing with the Special Master or Designee of the City Manager immediately.

169.    The Special Master is already engaged to conduct hearings on Thursday, January 16, 2014. *See*, Agenda attached as Exhibit "B" to this Complaint.

170.    As of the date of the filing of this Complaint, the City has not set a post-deprivation hearing.

171.    In particular, the revocation of Plaintiff's licenses has not been placed on the January 16, 2014 agenda.

172.    The next hearing before the Special Master is not scheduled until Thursday, January 23, 2014. Plaintiff has not been set for hearing on that agenda either. In any event, a hearing on January 23, 2014 would not be sufficiently prompt to comply with the requirements of Due Process.

173.    The revocation of Plaintiff's licenses violates the Due  Process Clause as applied because a prompt post-deprivation hearing has not been scheduled within a sufficiently brief period of time – in fact, no hearing has been scheduled at all.

168.    Because no hearing has been scheduled, a ruling on the disputed issues and the propriety of the penalty is impossible. Without a ruling by the Master or City Manager Designee, Plaintiff cannot obtain judicial relief.

174.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court take jurisdiction over the parties and this cause;

B.    That the Court declare that the revocation Order and closure of Plaintiff's business violated Plaintiff's due process rights;

C.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional on their face because those provisions violate Plaintiff's due process rights;

D.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to Plaintiff because they have been employed to violate Plaintiff's due process rights.

E.      That the Court enter a permanent injunction forever enjoining Defendant from issuing emergency closure orders under 102-381 and 14-408 of the Miami Beach Code in the absence of an Order from a Court directing same;

F.      That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

G.      That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

## COUNT VI

**(Violation of First Amendment and Due Process Rights – Bad Faith / Retaliation)**

175.    Plaintiff realleges the facts set forth in Paragraphs 1 through 75 and incorporate those facts into this Count by reference.

176.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

177.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff

therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

178.   The declaration of emergency in this case was entirely pretextual. The purported violation, if in fact it ever existed, would be cured as soon as the alleged underage performer was removed from the stage with no realistic prospect for recurrence.

179.   The decision to revoke Plaintiff's business license and certificate of use for a period of six months is punitive and is not tied to any facts or circumstances of this case.

180.   Furthermore, the City has had an opportunity through exercise of a search warrant on the premises and the City's own independent investigation to determine that there are no other underage performers at the club and that all other performances are, have been, and will in the future be of a lawful nature.

181.   As noted above, Plaintiff and its principal officer have had an adversarial relationship with Miami Beach for a number of years, including numerous lawsuits and criminal and ethics investigations of City staff and elected officials.

182.   Defendant has employed the subject Ordinances against Plaintiff for bad faith, pretextual and retaliatory reasons because of Plaintiff's prior conduct toward the City along with a current law suit pending before this Court.

183.   Likewise, the closure order issued by Defendant is not limited to those performances or those portions of the premises which are believed to represent an immediate threat to the health, safety and welfare of Plaintiff's customers and employees. Instead, the closure order requires that the entire business be closed and that all further speech activities be abandoned.

184.     Furthermore, the six month duration of the license revocation, without any opportunity to cure the perceived emergency speaks for itself. This is a punitive measure, brought in bad faith, and constitutes retribution for past acts. It is an attempt to silence Plaintiff's speech and shred its due process rights.

185.     While Plaintiff is subject to the emergency closure order, it is completely unable to engage in free speech.

186.     The emergency closure order has much more than an incidental effect on Plaintiff's First Amendment protected expression as the order allows no alternative avenues of communication – an entire category of speech is simply prohibited.

187.     Reliance on the subject Ordinances as a basis for Defendant's emergency closure orders is entirely pretextual.  Defendant knows that Plaintiff's business does not pose an immediate threat or serious danger to the health, safety or welfare of the community. The closure Order was motivated entirely by an intent to harass Plaintiff and deny its right of free speech.

188.     Also telling is that the Defendant chose to issue the license revocations on a Friday at 5:00 PM., thus preventing any immediate Court redress as well as additional economic hardship (because the forced closure occurred during the lucrative weekend period).

189.     Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court take jurisdiction over the parties and this cause;

B.      That the Court declare that the revocation Order and the closure of Plaintiff's business violated Plaintiff's First Amendment rights and its right of due process;

C.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional on their face because those provisions violate Plaintiff's First Amendment and due process rights;

D.      That the Court declare that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to the Plaintiff because they have been employed to violate Plaintiff's First Amendment and due process rights.

E.      That the Court enter a permanent injunction forever enjoining Defendant and from issuing emergency closure orders under the subject Ordinances in the absence of an Order from a Court directing same;

F.      That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

G.      That the Court grant supplemental relief including, but not limited to, an award of Plaintiff's costs and attorney's fees.

## <u>COUNT VII</u>
### (Violation of Substantive Due Process)

190.    Plaintiff realleges the facts set forth in Paragraphs 1 through 75 and incorporate those facts into this Count by reference.

191.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

192.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and

immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

193.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by Defendant. Such communication is protected under the First Amendment to the United States Constitution.

194.    The revocation Order given to Plaintiff fails to provide Plaintiff with an opportunity to cure the alleged violation.

195.    It is apparent that the violation complained of (if sustained) is capable of a ready cure:

A.    Any underage performer can be barred from performing at the club in the future;

B.    Performers can be investigated to ensure that they are all over the age of majority;

C.    Procedures can be reinforced to ensure that there are no future instances of underage performers, such as training of management staff, requiring two form of identification and mandatory retention of copies of the performer's IDs and personal information. All of these steps, have of course, been implemented.

D.    Additional training could be afforded in the specific area of sex trafficking. That training has already taken place through the Ace / HSI -sponsored COAST seminar.

196.    Given the 20 plus years of lawful operation of Plaintiff's establishment, and the fact that there has been not a single prior instance of underage performances at the club, there is no reason to believe that any violations will occur in the future; statistics and time show, to a scientific certainty, that any alleged performance by a minor would have been a "fluke" which is unlikely ever to be repeated.

197.    The six month revocation and closure is not remedial because it does not directly address any current emergency or ongoing threat to the public, health, safety or welfare. Rather the revocation and closure is entirely punitive.

198.    The failure to provide a cure, and the imposition of a punitive penalty which bears no relationship to the nature of alleged infraction, violate Plaintiff's substantive right of due process.

199.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court takes jurisdiction over the parties and this cause;

B.    That the Court declares that the Revocation Order issued against Plaintiff is punitive and bears no relationship to any ongoing violation or government interest and that such pretextual and selective enforcement violates the Due Process Clause of the Fourteenth Amendment;

C.    That the Court declares that §§14-403 through 14-408 and §§102-381 through 102-385 of the Miami Beach Code are unconstitutional as applied to this Plaintiff as they violate Plaintiff's right of Due Process.

D.    That the Court enter a permanent injunction forever enjoining Defendant from issuing emergency closure orders under §§14-403 through 14-408 and §§102-381

through 102-385 of the Miami Beach Code in the absence of an Order from a Court directing same;

E.     That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

F.     That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

## COUNT VIII
### (Excessive Penalty – Eighth Amendment)

200.    Plaintiff realleges the facts set forth in Paragraphs 1 through 75 and incorporate those facts into this Count by reference.

201.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

202.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore requires a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

203.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by Defendant. Such communication is protected under the First Amendment to the United States Constitution.

204.    The Order Revoking Plaintiff's Occupational License and Certificate of Use prohibits Plaintiff from operating Club Madonna or any other business that the present location.

205.    In addition to silencing Plaintiff's speech for six months, the Defendant has also deprived Plaintiff of any lawful use of the property.

206.    The six month revocation far exceeds any proportionate penalty and is not related to any on-going violation which may pose a threat to the residents of Miami Beach.

207.    The revocation Order and the six month revocation of licenses violate the Excessive Fines Clause of the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment and Article 1 §17, of the Florida Constitution. *See*, U.S. v. Bajakajian, 524 U.S. 321, 118 S.Ct. 2028 (1998).

208.     The Revocation Order imposes an unreasonably long prior restraint; it is equivalent to a six month moratorium on speech, which is itself unconstitutional. *See*, Howard v. City of Jacksonville, 109 F.Supp.2d 1360 (M.D. Fla. 2000).

209.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court takes jurisdiction over the parties and this cause;

B.    That the Court declares that the closure order issued against Plaintiff is pretextual and represents the selective enforcement of the laws against Plaintiff in violation of the Eighth Amendment;

C.    That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

D.      That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

## COUNT IX

**(Violation of Due Process; Strict Liability with no Showing of Responsible Relationship)**

210.    Plaintiff realleges the facts set forth in Paragraphs 1 through 75 and incorporate those facts into this Count by reference.

211.    This is an action for declaratory relief pursuant to Title 28, United States Code, §2201.

212.    Plaintiff asserts that its position set forth in this Complaint is legally sound and supported by fact and law. Defendant's actions however have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the enforcement of the legislation at issue herein. Plaintiff therefore require a declaratory judgment declaring its rights, privileges and immunities. There is a clear, present, actual, substantial, and bona fide justiciable controversy between the parties.

213.    Plaintiff has a clear legal right to provide exotic entertainment to consenting adult patrons without fear of retaliatory conduct and selective enforcement by Defendant. Such communication is protected under the First Amendment to the United States Constitution.

214.    Neither Plaintiff nor its principals have been charged with any crime or cited for any civil violation. Nonetheless, the City attempts to impose a civil penalty on Plaintiff for the criminal acts of third parties.

215.    It is a violation of due process to punish a citizen without a showing that the person was in a "responsible relationship" with respect to the person committing the crime or offense. *See*, Lady J. Lingerie, 176 F.3d at 1367-69.

216.    The Revocation Order bases the need for revocation on the claim that "the owner of Club Madonna has admitted to having no actual knowledge of whether the minor performed at his establishment…".

217.    The revocation notice issued by the City Manager expressly acknowledges that the management of Club Madonna had no knowledge of the alleged violation.

218.    There is no allegation and no showing of a responsible relationship: that Plaintiff, its principal, Leroy C. Griffith, or its management staff knew or should have known of the violation and were in a position to have prevented the violation.

219.    The Revocation Order imposes vicarious liability without a showing of responsible relationship in violation of the Due Process Clause of the Fourteenth Amendment. *See*, Lady J. Lingerie, 176 F.3d at 1367-69; Rameses, Inc. v. County of Orange, 481 F. Supp. 2d at 1326-27.

220.    Plaintiff is entitled to a declaration of its rights.

WHEREFORE, Plaintiff prays for the following relief:

A.      That the Court takes jurisdiction over the parties and this cause;

B.      That the Court declares that the closure order issued against the Plaintiff is unconstitutional as applied as there was no showing of a responsible relationship between Plaintiff and any third party committing a criminal act

D.     That the Court enter a permanent injunction forever enjoining Defendant from issuing closure orders against the Plaintiff or any other similarly situated businesses without a showing of a responsible relationship.

E.     That the Court enter a judgment against Defendant for compensatory damages to compensate Plaintiff for its losses.

F.     That the Court grant supplemental relief including, but not limited to an award of Plaintiff's costs and attorney's fees.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

| | |
|---|---|
| ___/s/ Daniel R. Aaronson_____ | ___/s/ Gary S. Edinger_____ |
| DANIEL R. AARONSON, Esquire | GARY S. EDINGER, Esquire |
| Florida Bar No.: 314579 | Florida Bar No. 0606812 |
| 1 Financial Plaza #1615 | 305 N.E. 1st Street |
| Ft. Lauderdale, Florida 33394 | Gainesville, Florida 32601 |
| (954) 779-1700  (Fax) (954) 779-1771 | (352) 338-4440  (Fax) (352) 337-0696 |
| danaaron@bellsouth.net | GSEdinger@aol.com |
| | |
| JAMES S. BENJAMIN, Esquire | WOLFE LAW MIAMI, P.A. |
| Florida Bar No.: 293245 | |
| 1 Financial Plaza #1615 | RICHARD C. WOLFE, Esquire |
| Ft. Lauderdale, Florida 33394 | Florida Bar No.: 355607 |
| (954) 779-1700  (Fax) (954) 779-1771 | 175 SW 7th Street |
| sexlaw@bellsouth.net | Latitude One Offices |
| | Suite 2410 |
| | Miami, Florida 33130 |
| | (305) 384- 7370  (Fax) (305) 384-7371 |
| | rwolfe@wolfelawmiami.com |

*Attorneys for Plaintiff*

## DECLARATION

(28 U.S.C. § 1746)

I, LEROY C. GRIFFITH, do declare as follows:

1.      I am LEROY C. GRIFFITH.

2.      I am the President of CLUB MADONNA, INC., and am authorized to execute this Declaration on behalf of the said Plaintiff.

3.      I have read the foregoing Complaint, and all of the facts alleged in the Complaint are true and correct.

4.      I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: January 14, 2014

_____
LEROY C. GRIFFITH